**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

RAMESH KUMAR VAID, a/k/a Larry
Johnson,
Defendant-Appellant.

No. 97-4157

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CR-96-196-MJG)

Submitted: June 9, 1998

Decided: August 4, 1998

Before NIEMEYER and MICHAEL, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

James J. Nolan, PIERSON, PIERSON & NOLAN, Baltimore, Mary-
land, for Appellant. Lynne A. Battaglia, United States Attorney, Joyce
K. McDonald, Assistant United States Attorney, Baltimore, Mary-
land, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Ramesh Kumar Vaid pled guilty to eleven counts of fraud by interstate commercial carrier in violation of 18 U.S.C.A.§ 1341F (West Supp. 1998), and the court sentenced him to a thirty-three-month prison sentence to be followed by three years of supervised release. Vaid appeals, claiming that the district court's violation of Fed. R. Crim P. 11(d) was not harmless error, the district court abused its discretion by denying his motions to withdraw his guilty plea and to substitute counsel, and the prosecutor withheld exculpatory information in violation of Brady v. Maryland, 373 U.S. 83 (1963). Finding no error, we affirm.

I.

Vaid was charged in an eleven-count superseding indictment alleging that he and Youdh Gyani committed fraud by interstate commercial carrier. On September 26, 1996, Vaid's counsel, an Assistant Federal Public Defender, filed a motion to substitute counsel. On September 30 (the day Vaid's trial was scheduled to begin), the district court conducted an ex parte hearing, at which Vaid, his attorney, and an independent attorney the court appointed to advise Vaid were present. Vaid informed the court that he wanted a new attorney because he did not trust the public defender, who Vaid claimed was pressuring him to plead guilty. The public defender stated that he advised Vaid to plead guilty after the government outlined its case against Vaid, that Vaid understood their communications, but that Vaid disagreed with his assessment of the evidence. After reviewing the evidence, the independent attorney agreed with the public defender that Vaid likely would be convicted. The district court denied the motion, finding that it was not timely made and that the independent attorney was available to Vaid throughout trial.

2

After the ex parte hearing, Vaid proceeded to trial. The court pre-pared to empanel a jury as Gyani's counsel conferred with Vaid's public defender. At Vaid's counsel's request, the court permitted Vaid and Gyani to speak with their attorneys. Gyani had agreed to plead guilty to one count in the superseding indictment. After the meeting, Vaid agreed to plead guilty to all eleven counts in the superseding indictment, with no written plea agreement.

During the plea colloquy, the district court addressed Vaid person-ally and informed him that he had the right to plead not guilty but that if he pled guilty, the case would be over without a trial. Vaid stated that he understood. The court also reviewed the other rights Vaid was giving up by pleading guilty, and Vaid stated that he understood. The court summarized the superseding indictment, explained the maxi-mum sentence on each count, and reviewed the possible effect of the sentencing guidelines, including that Vaid's conviction may affect his permanent resident alien status. Vaid stated that he understood.

Vaid informed the court that he was a high school graduate, was educated in the English language, and had no problem understanding the proceedings. Vaid also stated that he had never been treated for a mental illness nor had he taken narcotics, medicine, or alcohol in the past week. The court reiterated that there was no plea agreement in the case, "[a]nd there ha[ve] been no promises made." (J.A. at 71). Vaid stated that he understood. At the government's request, the court ensured that Vaid understood Gyani was not acting as an agent for the government when Gyani spoke to Vaid before the trial began.

The court asked Vaid whether he committed the offenses charged in the superseding indictment, and Vaid said that he did. The govern-ment presented the evidence it would have produced at trial. Specifi-cally, Vaid and Gyani operated the Costco Sales business and identified themselves as Larry Johnson and Harry Stevens, respec-tively, to other business owners in the shopping center. Costco Sales had no regular business hours, and Vaid and Gyani posted no prices on merchandise received from manufacturers of perfume and elec-tronics and were not interested in making consumer sales. Rather, they faxed credit applications to the victim companies, misrepresent-ing their identities, the length of time the business had been open, and the business' credit history. Once they received credit, Vaid and

3

Gyani placed small orders and paid for them. As the Christmas season approached, however, Vaid and Gyani placed larger orders for merchandise, which Vaid paid for with company checks drawn on accounts with insufficient funds. When the merchandise was delivered to the store, Vaid and Gyani loaded the goods directly into a Ryder truck to sell elsewhere. At the conclusion of the government's recitation of facts, Vaid acknowledged that the government accurately summarized and could prove what had transpired.

The court then accepted Vaid's guilty plea, finding that Vaid understood his rights and that he "made a decision as to what [he] wish[ed] to do in this case . . . facing a charge and facing a trial and facing a realistic appraisal of the outcome of the trial . . . [and] that it is in [Vaid's] best interest to plead guilty[ ] and not go to trial." (J.A. at 86). Finally, the court found that a factual basis supported the plea.

On October 8, 1996, Vaid's counsel filed a motion to withdraw Vaid's guilty plea but did not state the grounds on which Vaid relied. The court summarily denied the motion. On October 22, Vaid moved for the second time to withdraw his plea, claiming that after he pled guilty, Gyani and a person named "Varma" told him they would testify at trial that Vaid was an employee of Costco who had no knowledge of, and did not participate in, the fraudulent scheme. The court applied the six-factor test set forth in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991), and denied the motion.

Before the sentencing hearing began, Vaid moved for a third time to withdraw his guilty plea. He claimed that Gyani coerced him into pleading guilty during their meeting before Vaid's trial was scheduled to begin. Vaid testified that the day after he entered his guilty plea, a witness named "Varma" contacted him and said that, pursuant to a subpoena from the government, he planned on telling the court the truth. The truth, according to Varma, was that Vaid only worked in the fraudulent scheme as a driver and that he took orders from Varma and Stevens. Vaid also claimed that the government had discovered that there was a "real" Harry Stevens for whom Gyani and Vaid allegedly worked and that the government planned a sting operation to apprehend Stevens. According to Vaid, the Federal Bureau of Investi-

4

gation taped the conversation during which Stevens asked Gyani to hire Vaid as a driver in the operation.

The district court denied Vaid's third motion to withdraw the guilty plea, finding that the Rule 11 colloquy was adequate. The court then sentenced Vaid to a thirty-three-month prison term and imposed three years of supervised release. Vaid timely appeals.

II.

On appeal, Vaid first claims that the district court erred by denying his motion to substitute counsel where he repeatedly expressed dissatisfaction with the public defender. In determining whether to grant or deny a motion to substitute counsel, a district court must consider: "(1) whether the motion for substitute counsel was timely; (2) whether the district court's inquiry into the defendant's complaint was sufficient; and (3) whether the conflict between attorney and client was so great as to amount to a `total lack of communication,' thereby preventing an adequate defense." United States v. Morsley, 64 F.3d 907, 918 (4th Cir. 1995) (quoting United States v. Hanley, 974 F.2d 14, 17 (4th Cir. 1992)). Our review of the district court's denial is for an abuse of discretion. See United States v. Corporan-Cuevas, 35 F.3d 953, 956 (4th Cir. 1994).

Vaid's request for new counsel was not timely made, coming four days before Vaid's trial was scheduled to begin. Moreover, the district court explored at length Vaid's claim that he did not trust counsel to represent him and appointed special counsel to advise Vaid at the hearing and to review the evidence in the case. Finally, there is no evidence that the conflict between Vaid and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. See Morsley, 64 F.3d at 918. On these facts, we find that the district court did not abuse its discretion in denying Vaid's motion to substitute counsel. See Corporan-Cuevas, 35 F.3d at 956.

III.

Vaid also contends that the district court violated Fed. R. Crim. P. 11(d), by failing to determine that his guilty plea was voluntary and

5

not the result of force or threats or of promises not contained in a plea agreement. We accord great deference to the district court's "decision as to how best to conduct the [Rule 11] colloquy." United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991).

Rule 11(d) requires the court to address the defendant personally to determine that the guilty plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. See Fed. R. Crim. P. 11(d); DeFusco, 949 F.2d at 119. A guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The government acknowledges that during the plea hearing, the district court did not use the terms "threats" or "force." Compliance with Rule 11, however, is evaluated under a harmless error standard. See DeFusco, 949 F.2d at 117. We will vacate a conviction resulting from a guilty plea only if the trial court's violation of Rule 11 affected a defendant's substantial rights. See id.

Our review of the record discloses that the district court fully discussed the nature and elements of the charges against Vaid, the applicable penalties he faced, including the effect of supervised release, and ensured that he consulted with and was satisfied with his counsel. The court also addressed the rights Vaid forfeited by virtue of his plea. Specifically, Vaid stated that he understood that he did not have to plead guilty, could proceed to trial, and no promises were made. The court also reviewed the impact of the sentencing guidelines and ascertained that there was a factual basis for the plea. Although the district court did not explicitly find that Vaid's plea was voluntary and not the result of threats or force, the court found that Vaid decided to plead guilty in the face of ample evidence of his guilt. We therefore find that the district court's technical violation of Rule 11 was harmless error because the violation did not affect Vaid's substantial rights.* See id.

_____

*We note that the cases on which Vaid relies to support his assertion that the district court's failure to comply with Rule 11(d) affected his substantial rights are factually distinguishable and do not convince us that the district court's omission was not harmless error.

6

IV.

Next, Vaid asserts that the district court abused its discretion in denying his motions to withdraw his guilty plea. See United States v. Wilson, 81 F.3d 1300, 1305 (4th Cir. 1996) (stating standard of review). Withdrawal of a guilty plea is not a matter of right. See Moore, 931 F.2d at 248. The defendant bears the burden of showing a "fair and just reason" for the withdrawal of his guilty plea. See Fed. R. Crim. P. 32(e); United States v. Hyde, ___ U.S. ___, 65 U.S.L.W. 4369 (U.S. May 27, 1997) (No. 96-667). "[A]`fair and just' reason . . . is one that essentially challenges . . . the fairness of the [Fed. R. Crim. P.] 11 proceeding." United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc). An appropriately conducted Rule 11 proceeding, however, raises a strong presumption that the guilty plea is final and binding. See id.

Courts consider six factors in determining whether to permit the withdrawal of a guilty plea: (1) whether defendant offered credible evidence that the plea was not knowing or voluntary; (2) whether defendant credibly asserted his legal innocence; (3) the length of delay between the entry of the plea and the filing of the motion to withdraw; (4) whether defendant had close assistance of effective counsel; (5) whether withdrawal would prejudice the government; and (6) whether withdrawal would inconvenience the court or waste judicial resources. See Moore, 931 F.2d at 248. The defendant carries the burden of establishing a fair and just reason for withdrawal, even if the government has not shown prejudice. See Lambey, 974 F.2d at 1393-94.

Consideration of the Moore factors weighs against Vaid. As discussed in Part III, Vaid failed to offer credible evidence that his plea was not voluntary, and the district court's technical violation of Rule 11 did not affect Vaid's substantial rights. Vaid made no credible assertion of innocence but rather admitted during the plea hearing that he was guilty of participating in the fraudulent scheme. Further, Vaid did not show that counsel's assistance was not effective. Finally, allowing Vaid to withdraw his plea in light of his admission of guilt may prejudice the government and would waste judicial resources. Although the delay between Vaid's plea and his first motion to withdraw was minimal, that does not outweigh the other factors. We

7

therefore find that the district court did not abuse its discretion in denying Vaid's motions to withdraw his guilty plea. See Wilson, 81 F.3d at 1305.

V.

Finally, Vaid claims that the government withheld information in violation of Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose Varma's testimony and the existence of a "real" Harry Stevens. In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Id. at 87. We assume, without deciding, that Vaid's guilty plea does not foreclose him from raising his Brady claim.

We find no Brady violation here. Even if there was a "real" Harry Stevens, that does not exculpate Vaid because Vaid and Gyani nevertheless misrepresented their identities on credit applications to the victim companies. As for the claim that Varma would testify that Vaid was merely a driver in the operation, Vaid provided no support for his claim. We therefore reject this claim as meritless.

VI.

Accordingly, we affirm Vaid's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

8